



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Tom L. Beauchamp
Secretary of State
Austin, Texas

Dear Sir:                     Attention:  Claude A. Williams

Opinion No. O-764
Re:  Payment of supplemental
franchise tax upon amend-
ing corporate charter.

We are in receipt of your letter of May 4, 1939,
in which you request the opinion of this department upon
the following facts and questions.

You state in your letter that on March 10, 1939,
Cliff Towers Hotel Company was granted a domestic charter
with a capitol stock of $7,500.00.  On May 4, 1939, an
amendment to this charter was presented to the Secretary
of State increasing the capital stock from $7,500.00 to
$150,000.00.  This increase in capitol stock was paid in
by a conveyance to the corporation of a piece of property
in the City of Dallas which was appraised at a fair value
of not less than $575,000.00.  This property was taken
subject to a mortgage dated March 1, 1939, to secure a
note in the sum of $325,000.00 executed by the mortgagor
and payable in thirteen annual installments.  Your letter
continues as follows:

"In presenting the amendment to
the charter, the affidavits accompany-
ing such amendment recites that the
Cliff Towers Hotel Company has title
to the aforesaid property, which pro-
perty is of the cash value of $250,000
over and above the first mortgage loan
of $325,000.  This affidavit further
recites that the $250,000 valuation is



Honorable Tom L. Beauchamp, Page 2

carried on the corporation's books as $150,000 to the capitol stock account of ¥100,000 credited to the investment account or surplus of such company. This office required the payments of a filing fee of $190 for filing the amendment to the charter, and in addition thereto required the payment of franchise taxes covering the period from May 4, 1939, through April 30, 1940, based upon the capitol stock of $150,000 and the further amount of $325,000 evidenced by the note outstanding against the corporate property. The only question which has arisen relates to our charge at this time of the additional amount of franchise tax based upon statement contained in the amendment to the charter which was this day filed."

The following questions are submitted for our determination:

"1. Under the circumstances outlined above is the Secretary of State authorized to require the corporation to pay a supplemental franchise tax covering the fractional portion of the year from May 4, 1939, through April 30, 1940?

"2. In event the above question is answered in the affirmative, upon what portion of the corporation's capitol assets of $575,000 (represented by its authorized and paid in capitol stock of $150,000, its surplus as stated in its charter amendment of $100,000, and the amount of $325,000 represented by the remaining value of the property subject to the note executed by Cliff Towers Corporation in said amount of $325,000) are we entitled to use as a basis for determining the amount of tax



Honorable Tom L. Beauchamp, Page 3

due by it?

"3. In the event question number one
is answered in the negative, and assuming
there is no further change in the financial
status of the corporation's capitol stock,
then upon what portion of said $575,000
should the tax due May 1, 1940, be based?"

You indicate that the taxpayer has paid the tax
under protest as provided in Article 7057-b and the money is
being held in suspense awaiting the determination of these
questions.

Article 7084, Revised Civil Statutes, 1925, pro-
vides in part as follows:

"(A) Except as herein provided, every
domestic and foreign corporation heretofore
or hereafter chartered or organized to do
business in Texas, shall, on or before May
1 of each year, pay in advance to the Secre-
tary of State a franchise tax for the year
following . . ."

Article 7086, Revised Civil Statutes, 1925, pro-
vides as follows:

"Whenever a private domestic corpora-
tion is chartered in this state, . . .
such corporation shall be required to pay
in advance to the Secretary of State, as
its franchise tax from that time down to
and including the 30th day of April next
following, only such proportionate part of
its annual franchise tax, as hereinabove
prescribed, as the period of time between
the date of its filing of its articles of
incorporation . . . and on the first day
of May following, bears to a calendar year."

Article 7089, Revised Civil Statutes, 1925, con-
tains the following provisions:



"Except as herein provided, all cor-
porations now required to pay an annual
franchise tax shall, between January 1
and March 15 of each year, make a sworn
report to the Secretary of State, on
blanks furnished by that officer, showing
the condition of such corporation on the
last day of its preceding fiscal year.
The Secretary of State may for good cause
shown by any corporation extend such time
to any date up to May 1 . . ."

Article 7092 provides in part as follows:

"The Secretary of State shall, during
the month of May of each year, notify each
domestic and foreign corporation which may
be or become subject to a franchise tax
under any law of this state, which has
failed to pay such franchise tax on or be-
fore the first day of May, that unless such
overdue tax together with said penalty there-
of shall be paid on or before the first day
of July next following, the right of such
corporation to do business in this state
will be forfeited without judicial ascer-
tainment. . ."

The above statutes clearly establish that when Cliff
Towers Hotel Company was incorporated on March 10, 1939, it
was then due a franchise tax for the period from March 10,
1939, to April 30, 1939, on its capitol stock and such tax
was due upon the filing of its charter. The franchise tax
for the year 1940 was due and payable on May 1st of 1939,
based upon its outstanding capitol stock, surplus, etc.,
prior to May 1, 1939. The next franchise tax due by this
corporation will be based upon its outstanding capitol stock,
surplus, etc., on the last day of its fiscal year next pre-
ceding May 1, 1940, and will be payable in advance on the
last mentioned date for the franchise tax year 1941.

Although the charter amendment was filed on May 4,
1939, during the franchise tax year 1940, the franchise taxes
for such year were already due and payable based upon the



capitol structure prior to May 1st and the filing of the amendment would not affect the amount of tax due for that year.

Prior to 1930, Article 7090 R. C. S., 1925, provided as follows:

> "In the event of increase in the authorized capitol stock of any domestic or foreign corporation, it shall also pay in advance a supplemental franchise tax thereon for the remainder of the year down to and including the 30th day of April next thereafter, the amount of which shall be determined as is provided in the third article of this chapter in case of the first franchise tax payment to be made by a domestic corporation which may be hereafter authorized to do business within this state."

This statute was repealed by Acts, 1930, 41st Legislature, 5th C. S., page 220, Ch. 68, Sec. 1.

We have been unable to find any further statutes authorizing the collection of a supplemental franchise tax upon filing a charter amendment, and by the repeal of the above quoted statute it was evidently the intention of the legislature that a supplemental franchise tax should no longer be paid under these circumstances.

We, therefore, answer your first question in the negative.

Having answered your first question in the negative, your second question does not require an answer.

As pointed out above the franchise tax due on May 1, 1940, in advance for the year 1941 will be based upon the corporate structure as of the last day of the fiscal year next preceding May 1, 1940. This being true its present capitol structure will not in any way become a factor in calculating the amount of tax due for the year 1941 and your third question may not materialize. We recognize that in submitting your third question you might have also had in mind corporations similarly situated with respect to this year's tax and a present answer is desired. If this is true we respectfully



Honorable Tom L. Beauchamp, Page 6

request that you resubmit your third question and we shall be glad to give it our further consideration.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By     *Cecil C. Cammack*

Cecil C. Cammack

Assistant

CCC:FL

APPROVED JUN 24, 1939

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY B.W.
CHAIRMAN